DAVIS-MARTIN COUNTY RURAL TELEPHONE CORPORATION
*v.* PUBLIC SERVICE COMMISSION OF INDIANA ET AL.

[No. 19,283. Filed April 26, 1961. Rehearing denied June 15, 1961. Transfer denied December 14, 1961. Petition to Reconsider Denial of Transfer denied January 15, 1962.]

*Gray & Waddle, Carl M. Gray,* of Petersburg, *Tennis & Cochran, Wendell Tennis, Jack N. Cochran,* of Sullivan, and *Jack E. Hayes,* of Washington, for appellant.

*Claude M. Warren* and *Goodrich, Campbell & Warren,* of counsel, of Indianapolis, for appellee, Indiana Telephone Corporation.

COOPER, J.—This is a judicial review of a decision of the Public Service Commission of Indiana entitled below as, "In the Matter of the Petition of Indiana Telephone Corporation for a Certificate of Territorial Authority for Shoals Exchange" and "Daviess-Martin County Rural Telephone Corporation v. Indiana Telephone Corporation," said matter being consolidated below and is before us on review in the same manner.

We judicially know that this cause has been before our Supreme Court before. and was affirmed in part

and reversed in part. See *Pub. Serv. Comm. of Ind. et al.* v. *Ind. Tel. Corp.* (1957), 237 Ind. 352, 146 N. E. 2d 248.

Having been before the Supreme Court, we must bear in mind that the decision and rulings made by that court upon the first appeal settle definitely for the purposes of litigation, all questions adjudicated. See *City of Rushville* v. *Rushville Natural Gas Co.* (1905), 164 Ind. 162, 73 N. E. 87, and such decision is the "law of the case"; also, the Supreme Court's judgment on the former appeal is res judicata against the parties of record thereto, with respect to all matters in issue and determined therein. *Collins, Trustee* v. *Spiegel* (1938), 214 Ind. 206, 14 N. E. 2d 582. A second, or subsequent appeal or review only brings up for review the proceedings subsequent to the reversal or remand, and all questions presented on the first appeal, including jurisdictional questions, will not be considered on the second appeal; also, all rulings on questions not expressly affirmed or reversed will be deemed impliedly affirmed. See *Chicago, etc., R. Co.* v. *Dinius* (1913), 180 Ind. 596, 103 N. E. 625.

The record before us reflects that the issues before the Commission in Cause No. 25590 were presented by the "Second Amended Petition" of Indiana Telephone Corporation (hereinafter referred to as "Company") and the "Answer of the Intervenor, Daviess-Martin County Rural Telephone Corporation" thereto. The issues in Cause No. 25899 were presented by the "Amended Complaint" of Daviess-Martin County Rural Telephone Corporation (hereinafter referred to as "Co-Op"), the "Answer to Amended Complaint" thereto of the Company and the "Reply" of the Co-Op.

The record reveals that after the conclusion of all the evidence submitted in said consolidated causes, the Com-

mission made the following ruling, order and findings omitting the formal parts, signatures and legal descriptions contained therein, in its decision:

"BY THE COMMISSION:

"On August 26, 1954, Indiana Telephone Corporation (the 'Company'), filed with this Commission its verified Petition in Cause No. 25590, seeking a Certificate of Territorial Authority for its telephone exchange at Shoals, Indiana. Said cause was set for hearing on February 2, 1955, and notices of said hearing were given as provided by law.

"On January 14, 1955, Daviess-Martin County Rural Telephone Corporation (the 'Co-Op.') filed its Petition for Intervention in said cause; and on the same date, the Co-Op. filed with this Commission its Complaint against the Company in Cause No. 25899. Said cause was set for hearing on February 2, 1955, and notices of said hearing were given as provided by law.

"At the hearing on February 2, 1955, the Commission ordered that said causes be consolidated for hearing and disposition.

"At the hearing on February 2, 1955, Frances E Sim, a member of the Co-Op. and a resident of the territory involved, filed in these causes, her Petition for Leave to Intervene, which was granted.

"At the close of the hearing on February 2, 1955, the Company orally moved to amend its Petition in Cause No. 25590, to include a larger territory. The Commission directed the Company to file its motion in writing, which was done on February 9, 1955.

"After the hearing in these consolidated causes, this Commission entered its Order, dated May 5, 1955.

"On May 25, 1955, the Company filed with this Commission its Petition for Rehearing in these causes; and on June 2, 1955, this Commission entered its second order in these causes denying the Petition for Rehearing and authorizing the Co-op. to construct in its franchise area suitable telephone facilities in a portion of the area for which the

Company had requested a Certificate of Territorial Authority.

"On June 18, 1955, the Company filed in the Martin Circuit Court its Complaint against this Commission and the Co-Op., praying that the Order entered in these causes on May 5, 1955, and on June 2, 1955, be set aside as being unreasonable and unlawful.

"On September 22, 1955, the Co-Op. filed in these causes with this Commission its 'Complaint for Enforcement of Order'; and on September 23, 1955, the Company filed its 'Plea in Abatement' to said 'Complaint for Enforcement of Order.' After giving notice of hearing on said Complaint, hearing was held by the Commission on October 13, 1955.

"On November 4, 1955, this Commission entered its third Order in these causes directing the Company to remove its telephone facilities located within the territory in dispute; and on November 23, 1955, this Commission entered its Amended Order in these causes which is substantially the same as the Order of November 4, 1955.

"On December 9, 1955, the Company filed its Supplemental Complaint with the Martin Circuit Court in order to bring under the jurisdiction of said Court the Orders of the Commission in these causes which were approved on November 4, 1955 and November 23, 1955.

"On June 4, 1956, the Martin Circuit Court entered its Judgment and Decree, which was in effect that the Orders entered by this Commission in these causes were insufficient, unreasonable and unlawful and said Orders were vacated and set aside.

"In due course, this Commission and the Co-Op. appealed to the Indiana Supreme Court and on December 2, 1957, the Supreme Court affirmed part and reversed part of the Judgment and Decree of the Martin Circuit Court and remanded the matter back to this Commission. *Public Service Commission of Indiana* v. *Indiana Telephone Corporation,* — Ind. —, 146 NE (2) 249.

"On February 28, 1958, this Commission entered its Order in these causes setting a further hearing

on April 16, 1958, and directing all parties desiring to file further pleadings to do so fifteen (15) days prior to such hearing, along with a brief and concise statement of the nature of the evidence which any party proposed to present at the hearing.

"In compliance with the last mentioned Order, the Company filed its Second Amended Petition in Cause No. 25590 to which was attached a map showing in green the territory involved about which there is a dispute. By its Second Amended Petition, the Company requests this Commission to issue to the Company a Certificate of Territorial Authority, for the territory shown in green on said map and a Certificate of Public Convenience and Necessity for the territory shown in red on said map. The Company also filed a concise statement of additional evidence which it would present at the hearing on April 16, 1958.

"Also in compliance with the last mentioned Order, the Co-Op. filed its Amended Complaint in Cause No. 25899, which prays, among other things, that the Company be directed to remove its telephone facilities from the disputed territory and to enter into 'reciprocal extended service agreements affecting the Trinity Springs exchange' of the Co-Op. and the Shoals exchange of the Company. The Co-Op. also filed a concise statement of additional evidence which it would present at the hearing on April 16, 1958.

"The Co-Op. filed an Answer to the Company's Second Amended Petition in Cause No. 25590; the Company filed an Answer to the Co-Op's. Amended Complaint in Cause No. 25899; and the Co-Op. filed a Reply to the second paragraph of the Company's Answer to the Amended Complaint.

"After notices were given and mailed as provided by law, public hearing was held in these causes on April 1, 1958, in the Rooms of the Commission in the State House in Indianapolis, with appearances as noted above.

"There were no protestants or intervenors.

"At the hearing on April 16, 1958, both parties proceeded on the basis that testimony and evidence already in the record in these causes would remain a part of the record; and this Commission

being composed of different personnel than that which heard the evidence previously submitted, has studied the entire transcript in these causes from the filing of the original Petition on August 26, 1954, to date. Further, at the hearing on April 16, 1958, the Company presented the oral testimony of two witnesses and introduced into the evidence *Petitioner's Exhibit No. 2*, which is the map attached to the Company's Second Amended Petition; and the Co-Op. presented the oral testimony of one witness. In addition, counsel for the Co-Op. read into the record *Co-Op. Rehearing Exhibits A, B and C*, being portions of the By-Laws of the Co-Op. The Assistant Public Counselor introduced, and there was admitted into the evidence, *Public's Exhibit 1A*, showing names of persons now receiving or who have previously received service from the Co-Op., the date service was applied for and the date service was installed.

"The Commission, having heard or studied all of the evidence, having read the Judgment and Decree of the Martin Circuit Court hereinabove referred to and the decision of the Indiana Supreme Court in *Public Service Commission of Indiana* v. *Indiana Telephone Corporation, supra,* having heard the arguments of counsel, and being duly advised, now finds as follows:

"1. That there is no dispute concerning the territory shown in green on Petitioner's Exhibit No. 2 and a Certificate of Territorial Authority covering said area should be issued to Indiana Telephone Corporation.

"2. That on November 9, 1951, in Cause No. 23146, this Commission issued to the Co-Op. a Certificate of Territorial Authority covering the territory shown in red on Petitioner's Exhibit No. 2 (hereinafter called the 'disputed area') and certain other territory not involved in these causes.

"3. That in the Fall of 1953 or the Spring of 1954, the then President of the Co-Op. signed a map tendered by the Company, which purported to establish certain boundaries between them. This map established, as territory of the Company, a portion of the disputed area. There is insufficient evidence to sustain the charge of the Co-Op. that the map was obtained by fraud and deception.

"4. That in the Summer of 1954, the Company began to render telephone service to one or more industrial plants newly estalished in the territory covered by the map signed by the President of the Co-Op.

"5. That at the time telephone service to such industrial plants was begun by the Company, the Co-Op. held a Certificate of Territorial Authority issued by this Commission to render telephone service exclusively in that area; the Company held no certificate or permit to serve in that area and has operated in said disputed area without authority from the Public Service Commission from the Summer of 1954 to the date of this Order.

"6. That the Co-Op. had no telephone facilities in the disputed area until after the Company commenced rendering service to the newly established industrial plants and that the Co-Op., pursuant to Order of the Commission, did install telephone facilities to render service to the industrial plants, and was ready and able to render said service about September, 1955.

"7. That the Co-Op. proposes to serve in the disputed area through its Trinity Springs exchange; and the Company proposes to serve in the disputed area through its Shoals exchange. Both exchanges are equipped with automatic dial equipment.

"8. That the City or Town of Shoals is the county seat of Martin County, Indiana; the disputed area is located wholly within said county; and Shoals is the center of community interest for the disputed area.

"9. That if the Co-Op. serves the disputed area, a telephone call between the disputed area and Shoals will require a circuity of routing through three different exchanges and a toll charge will be applied, unless the Company and the Co-Op. enter into an agreement for extended area service; but if the Company serves the disputed area, a telephone call between the disputed area and Shoals will be handled direct through the Shoals exchange.

"10. That The Co-Op. has constructed telephone facilities in the disputed area at a cost of approximately $65,000, most of which has been constructed while these matters have been in litigation; and the

Co-Op. estimates it will be required to invest an additional $20,000 in the disputed area in order to render service to all who desire service, which $20,000 includes the estimated cost of establishing extended area service by agreement with the Company.

"11. That the Company has constructed telephone facilities in the disputed area at a cost of approximately $41,786, and estimates an additional expenditure of approximately $12,655 in order to serve all in the disputed area who desire telephone service.

"12. That there are not more than 115 establishments in the disputed area, and presently the Co-Op. is serving 13 establishments and the Company is serving 6 establishments, including the two industries located in the disputed area.

"13. That there was insufficient evidence submitted by the Co-Op. to show the necessity of establishing extended area service between the Shoals exchange of the Company and the Trinity Springs exchange of the Co-Op., and that said extended area service should not be imposed upon the Company when it is ready, able, and willing to serve directly through its Shoals exchange.

"14. That public convenience and necessity required immediate telephone service in the disputed area in the Summer of 1954 and the Company rendered that service when no other telephone company was ready or able to do so.

"15. That taking into consideration the community interest, convenience to the public, the financial effects upon both the Co-Op. and the Company, the investment in the disputed area by both the Co-Op. and the Company and the charges for service to the public by each utility concerned, public convenience and necessity require telephone service in the disputed area through the Shoals exchange of the Company, and the Company should be authorized to render telephone service in the disputed area, as a second telephone utility, along with the Co-Op.

"IT IS THEREFORE ORDERED BY THE PUBLIC SERVICE COMMISSION OF INDIANA that:

"A. Indiana Telephone Corporation be, and it is hereby, issued a Certificate of Territorial Authority for the territory shown in green on Petitioner's Exhibit No. 2, which territory is more particularly described as follows:

.    .    .    .    .

"B. Indiana Telephone Corporation be, and it is hereby, issued, as of the date of this Order, a Certificate of Public Convenience and Necessity to serve as a second telephone utility in the territory shown in red on Petitioner's Exhibit No. 2, which territory is more particularly described as follows:

.    .    .    .    .

"C. The prayer of the Daviess-Martin County Rural Te'ephone Corporation contained in its Amended Complaint, filed in Cause No. 25899, be, and it is hereby, denied.

"D. Indiana Telephone Corporation and the Daviess-Martin County Rural Telephone Corporation shall pay into the Treasury of the State of Indiana, through the Secretary of this Commission, the total sum of $278.28, which shall be paid equally between them, as well as any future charges which may be incurred in connection with this cause. Said total sum is itemized as follows:

| "Engineering Costs | $250.51 |
| Special Services (Reporters) | 12.70 |
| Advertising Costs | 15.07 |
| TOTAL | $278.28" |

That thereafter, the Co-Op. filed a petition for a rehearing and a request for oral argument, and the same were denied by said Commission.

The assigned error before us is that the decision, ruling or order of the Public Service Commission of Indiana is contrary to law.

Under this assignment of error, the burden is upon the appellant to show that the determination, decision

or order of the Commission is insufficient, unreasonable and unlawful and before this court on review can say that a determination, decision and order are insufficient, unreasonable and unlawful, it must appear that there was no substantial evidence to support the findings of fact upon which the determination, decision and order rested. If there is substantial evidence to support the findings, and if the determination, decision and order is one which the Commission has the power to make, in view of the findings, courts must uphold it. See *N. Y. C. & St. L. R. R. Co.* v. *Singleton* (1934), 207 Ind. 449, 458, 190 N. E. 761.

Bearing in mind what our Supreme Court stated in the case of *Pub. Serv. Comm. of Ind. et al.* v. *Ind. Tel. Corp., supra,* we find at p. 368, Judge Arterburn, speaking for the court stated:

> "The Public Service Commission performs a legislative function and is not a part of the judicial division of our government.
>
> " 'The purpose of a judicial review of an administrative order by the court is not to decide the matter on the merits for the administrative body but rather solely to determine whether or not the order made by the administrative body was outside the limits and jurisdiction of such body. Once the matter of jurisdiction is determined the court has no further right to interfere with an administrative procedure which belongs to another department of the government—not the judiciary. As a court, we have no right to substitute our judgment on the merits of an issue before an administrative body acting within its jurisdiction. . . .
>
> " 'The remedy for any disappointment or unsatisfactory results before an administrative body which is acting within its jurisdiction is with the Legislature and not the courts.' *Pub. Serv. Comm. of Ind.* v. *C., I. and L. Railway Co.* (1956), 235 Ind. 394, 404, 405, 132 N. E. 2d 698."

In determining the question if the order or findings were within the limits and the jurisdiction of the Public Service Commission, we next turn to the relevant portions of the statute which read as follows:

". . . In cases of conflict involving two (2) or more telephone companies the commission, considering such reports separately, or by consolidation of two (2) or more or all, shall have the power to issue its certificate after notice of hearing and a hearing.

"After the issuance of such certificate no other telephone company shall render telephone service in the area or areas so determined and defined, except pursuant to a certificate granted by the commission, after notice of hearing and hearing, that public convenience and necessity require that telephone service in any such area be renderd or offered by another company." Acts 1913, ch. 76, §97, as amended by Acts 1951, ch. 158, §1, p. 409, being Burns' sec. 54-601b, 1960 Supp.

As we have heretofore pointed out, the allocation of a utility service area is a legislative function. By the pertinent part of §54-601(b), Burns', which we have herein-above set out, the General Assembly delegated that function to the Public Service Commission. Our Supreme Court in the recent case of *Gen. Tel. Co. etc.* v. *Pub. Serv. Comm. of Ind. et al.* (1958), 238 Ind. 646, 652, 150 N. E. 2d 891, stated: ". . . §54-201 Burns', which requires every public utility 'to furnish reasonably adequate service and facilities' is to be construed in pari materia with §54-601(b), Burns', in furnishing an additional standard for the guidance of the Commission."

The general rule of law is that the Appellate Court on a review of an administrative board's ruling or order may not weigh the evidence and substitute its discretion or judgment for that of the Commission. Neither can this court, as a general rule,

disturb the findings of the Commission where it has conformed with the statutory procedural methods and where its decision is supported by substantial evidence. *Pub. Serv. Comm. of Ind. et al.* v. *Ind. Tel. Corp., supra,* at 368; see also, *State ex rel. Pub. Serv. Comm.* v. *Johnson Cir. Ct.* (1953), 232 Ind. 501, 112 N. E. 2d 429.

The appellant in his argument before us maintains that the evidence in the record is insufficient to sustain findings numbers 3, 9, 13 and 14 of the Commission in its decision and the facts found are insufficient to sustain the decision, ruling or order of the Commission dated November 13, 1958. We believe it is apparent from the foregoing findings that the Commission exercised its statutory authority in the required manner by basing its final order or decision upon facts impartially found by it as required by §54-112, Burns'. We believe that the findings of ultimate facts, as heretofore set out, contain the necessary essential basic facts and are specific enough to enable us to review intelligently the Commission's decision as required by §54-112, Burns'. See *Wabash Valley Coach Co.* v. *Arrow Coach Lines* (1950), 228 Ind. 609, 613, 94 N. E. 2d 753.

In reviewing the evidence, which we will not attempt to set out, the transcript discloses that there was substantial evidence to support the findings of the Commission. The transcript also reveals that the order of the Commission was supported by the findings, and, as we have heretofore pointed out, the order is one which the Commission had the power, under the statute, to make.

In conclusion, we are of the opinion that the defects pointed out in the prior review by our Supreme Court have been corrected, and it is our opinion that the appellant has failed to show wherein the order of the Com-

mission under the evidence produced and the facts found is insufficient, unreasonable and unlawful.

Having reached this conclusion, it necessarily follows that the decision, ruling or order of the Commission is not contrary to law.

Order and decision affirmed.

Ax, C. J., Bierly, Gonas, Kelley, Myers, Pfaff and Ryan, JJ., concur.

### ON PETITION FOR REHEARING

COOPER, J.—On April 26, 1961, this court affirmed the order and decision of the Public Service Commission in the foregoing cause.

The appellant filed on May 5, 1961, Petition for Rehearing, alleging error of this court in the following respects:

"1. In failing to give a statement in writing and in failing to give a decision thereon of a substantial question arising on the record and presented by Appellant's Brief, to-wit:

"The constitutional question that the Order of the Commission is a confiscation of the property of the Appellant in violation of the Bill of Rights of the Indiana Constitution, Article I, §12, and the 14th Amendment of the Federal Constitution.

"2. In failing to give a statement in writing and in failing to give a decision thereon of a substantial question arising on the record and presented by Appellant's Brief, to-wit:

"That the issuance of a Certificate of Public Convenience and Necessity to a telephone utility by the Public Service Commission is without authority under the provision of Chapter 158 of the Acts of 1951, since said Act does not provide for the issuance of a Certificate of Public Convenience and Necessity by the Public Service Commission either within the provisions of the Act itself or within the Title thereto.

"3. In failing to give a statement in writing and in failing to give a decision thereon of a substantial question arising on the record and presented by Appellant's Brief, to-wit:

"The issuance of a Certificate of Public Convenience and Necessity to a telephone utility by the Public Service Commission under the provisions of Chapter 158 of the Acts of 1951 is unconstitutional under the provisions of Article 4, Section 19 of the Constitution of the State of Indiana for the reason that such provision in the Act is not expressed in the Title thereto, and is, therefore, void."

The object and purpose of a petition for rehearing is to give the reviewing court an opportunity to correct its own omissions or errors by having them called to said court's attention. A petition for rehearing should ask for a rehearing only on points which were originally properly presented that were overlooked or improperly decided. See *Board of Tax Commissioners* v. *Stanley* (T. D. 1952), 231 Ind. 338, 108 N. E. 2d 624.

We have again reviewed the record and briefs in this matter but fail to find in the appellant's assignment of error, or in its argument portion of their brief wherein they properly presented and discussed the foregoing questions, as provided for by Rule 2-17 (e) of the Supreme Court. It affirmatively appears from the record that the appellant is now, for the first time, attempting to raise on petition for rehearing the several new questions as heretofore set forth. It is the law that new questions will not be considered upon a petition for rehearing. See *Board of Tax Commissioners* v. *Stanley, supra.*

Petition for rehearing denied.

Pfaff, C. J., Ryan, P. J., and Ax, Bierly, Gonas, Kelley, and Myers, JJ., concur.

NOTE.—Reported in 174 N. E. 2d 63. Rehearing denied 175 N. E. 2d 439.